# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:16-cv-00104-MR-DLH

| | |
|---|---|
| PATRICIA BLOKER MACHNIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment [Doc. 33].

## I. PROCEDURAL BACKGROUND

The Plaintiff, proceeding *pro se*, brings this action against the United States of America, seeking damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680 ("FTCA"), for injuries she allegedly sustained after tripping on a stone walkway at the Newfound Gap observation area in the Great Smoky Mountains National Park. [Doc. 1].[1]

---

[1] The Plaintiff originally named as Defendants the United States Department of the Interior, Sally M. Jewell, Jill Westmoreland Rose, Loretta Lynch, and Nicholas Holt. [Doc. 1 at 1-2]. The United States of America was substituted as the proper party defendant

The United States filed the present Motion for Summary Judgment on November 28, 2017. [Doc. 33]. Pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), the Court issued an order advising the Plaintiff of her obligations in responding to the United States' Motion. [Doc. 36]. The Plaintiff filed a Response in opposition on December 19, 2017. [Doc. 38]. The United States elected not to file a reply. [Doc. 40].

Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News and Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record or by showing that the adverse party

---

on March 3, 2017. [Doc. 18].

cannot produce admissible evidence to support that fact. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the court that a triable issue exists. Id. Finally, in considering a party's summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the non-moving party, and must draw all reasonable inferences in favor of the non-movant as well. Adams v. Trustees of Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

## III. FACTUAL BACKGROUND

The following forecast of evidence is not in dispute.

On December 21, 2014, the Plaintiff, along with her husband and their two young granddaughters, drove from Gatlinburg, Tennessee to the Newfound Gap observation area in the portion of the Great Smoky Mountains National Park located in North Carolina. [Deposition of Patricia Machnik ("P. Machnik Dep."), Doc. 34-1 at 22-37; Deposition of Max E.

3

Machnik ("M. Machnik Dep."), Doc. 34-2 at 3-20]. As the Plaintiff's husband explained:

> We got out of the car. The girls got out. . . . they were kind of excited. They wanted to go look at the overview and they took off – they start taking off running. And you have to be real careful because there was just a little wall there. But before you get to the wall and the actual observation area, there's like the parking lot, sidewalk, and then a piece of grass and then a sudden drop right off of that. So [my wife] was kind – she got a little hysterical because they were taking off and she was worried about them.
>
> \* \* \*
>
> [My wife] – yeah, so she took off. She tried going after them. . . I moved a little faster than she did and I took off to grab both of them, get them back, you know, where they weren't – get them calmed down so I could walk them over there so -- I . . . don't like them getting to close to that wall. . . it's like a drop-off – it's a drop-off just like that. And she was walking behind me and all of a sudden I heard her scream out. And I turned around and she was laying facedown on the walkway….

[M. Machnik Dep., Doc. 34-2 at 4-5].

In her statement accompanying her FTCA claim, the Plaintiff admitted that she was watching her grandchildren and not where she was walking. As the Plaintiff stated:

> On December 21, 2104, I was at the New Found Gap observation area with my husband and 2 granddaughters . . . . My granddaughters ran ahead to the overlook area to the portion that has no guard

4

> rail. I was watching for their safety as I was walking on the designated rock and concrete sidewalk. . . . I tripped over an uneven rock in the concrete/rock sidewalk that made me take a severe fall hitting my head, face, left arm, both knees, and twisting my left wrist.

[FTCA Statement, Doc. 34-3 at 1].

The stone walkway on which the Plaintiff fell is adjacent to the public parking lot at the Newfound Gap observation area. [Declaration of Kristopher Randy Hatten ("Hatten Decl."), Doc. 34-4 at ¶ 3; see also Declaration of Carmen Barnard, Doc. 34-5 Exs. 1, 2 (photographs of the stone walkway)]. No fee was charged to the Plaintiff to use this area, which is open to the public free of charge. [Hatten Decl., Doc. 34-4 at ¶ 5]. The Newfound Gap observation area is an extremely popular tourist destination and recreational area, hosting an average of two million visitors per year. [Id.]. Prior to the Plaintiff's alleged fall, the National Park Service was not aware of any hidden, artificial, or unusual hazard associated with the stone walkway. [Id. at ¶ 4].

## IV. DISCUSSION

Pursuant to 28 U.S.C. § 1346(b)(1), the United States can be held liable in tort only under circumstances where, if it were a private person, it would be liable to a claimant in accordance with the law of the place where the act or omission occurred. Because the Plaintiff's alleged injury occurred

5

within North Carolina, the tort and premises liability laws of North Carolina govern this case. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).

North Carolina has enacted a statute which shields landowners, including the United States, from liability for negligence where their land is made available to the public free of charge for recreational use. That statute provides, in pertinent part, as follows:

> Except as specifically recognized by or provided for in this Chapter, an owner of land who either directly or indirectly invites or permits without charge any person to use such land for educational or recreational purposes owes the person the same duty of care that he owes to a trespasser, except nothing in this Chapter shall be construed to limit or nullify the doctrine of attractive nuisance and the owner shall inform direct invitees of artificial or unusual hazards of which the owner has actual knowledge . . . .

N.C. Gen. Stat. § 38A-4(a). The purpose of this provision is "to encourage owners of land to make land and water areas available to the public at no cost for educational and recreational purposes by limiting the liability of the landowner to persons entering the land for those purposes." N.C. Gen. Stat. § 38A-1.

Here, it is undisputed that the United States did not charge visitors to use the Newfound Gap observation area for recreational purposes. Thus, under North Carolina's recreational use statute, the United States -- as the

6

landowner of the Great Smoky Mountains National Park, including the parking lot and walkway at Newfound Gap -- owed to persons directly or indirectly invited or permitted into those areas only the duty owed to a trespasser. See Fesmire v. United States, 9 F. App'x 212, 214 (4th Cir. 2001). In her response to the Motion for Summary Judgment, the Plaintiff does not address the application of North Carolina's recreational use statute. The Plaintiff only cites to cases regarding the duty owed to an invitee,[2] which are inapplicable in light of this statute.

With respect to trespassers, North Carolina law provides that "a landowner need only refrain from the willful or wanton infliction of injury." Nelson v. Freeland, 349 N.C. 615, 618, 507 S.E.2d 882, 884 (1998). As the North Carolina Supreme Court explained in Nelson, "[w]illful injury constitutes actual knowledge of the danger combined with a design, purpose, or intent to do wrong and inflict injury," and "a wanton act is performed intentionally with a reckless indifference to the injuries likely to result." Id. Here, the Plaintiff alleges that the Defendant's employees failed to maintain a safe stone walkway. There has been no forecast of evidence presented, however, that the United States or any of its agents or employees

---

[2] The Plaintiff also cites to cases from outside this jurisdiction which have no application.

7

had actual knowledge of an artificial or unusual hazard regarding the stone walkway or that the United States or any of its agents or employees committed any wrongful act with respect to its condition. An allegation that the United States failed to act or failed to warn the Plaintiff regarding the condition of the walkway is simply not sufficient. Fesmire, 9 F. App'x at 215 ("We have found no case in North Carolina which holds that the passive conduct of a landowner is deemed to be an act performed 'intentionally with a reckless indifference to the injuries likely to result.'"). As such, the Plaintiff has failed to present a forecast of evidence from which a trier of fact could find any willful or wanton conduct on the part of the United States.

As a visitor to the Park, the Plaintiff was, at best, an indirect invitee.[3] Even if she were a *direct* invitee, however, North Carolina imposes a duty to warn direct invitees only of "artificial or unusual hazards of which the owner has actual knowledge." N.C. Gen. Stat. § 38A-4. There has been no forecast of evidence presented that the United States or any of its agents or employees had actual knowledge of an artificial or unusual hazard regarding the stone walkway. Thus, even if the Plaintiff had been a direct invitee, the

---

[3] The Plaintiff does not contend that she was a direct invitee of the United States, nor is there any forecast of evidence in the record to suggest that she was.

8

United States did not breach any duty to warn her about the condition of the stone walkway.

In sum, 28 U.S.C. § 1346(b)(1) and N.C. Gen. Stat. § 38A-4(a), when taken together, dictate that the United States owed the Plaintiff only the limited duty owed to a trespasser to refrain from willful or wanton conduct. There is no evidence of either willful or wanton acts by the United States or of any actual knowledge on the part of the United States regarding any artificial or unusual hazards regarding the stone walkway. Accordingly, the Court concludes that the United States is entitled to summary judgment as a matter of law. This action, therefore, is dismissed.[4]

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 33] is **GRANTED**, and this case is hereby **DISMISSED WITH PREJUDICE**.

A Judgment consistent with this Order will be entered contemporaneously herewith.

---

[4] Because the Court concludes that the United States is entitled to a judgment as a matter of law under the North Carolina recreational use statutes, the Court need not address the United States' alternative arguments that it had no duty to warn of any obvious conditions or that the Plaintiff's contributory negligence bars her claim.

**IT IS SO ORDERED.**    Signed: March 29, 2018

Martin Reidinger
United States District Judge